**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | | |
|---|---|---|
| **MARY DOLBY, on behalf of herself** | : | |
| **and all others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.** |
| | : | |
| **v.** | : | |
| | : | |
| **UNILEVER UNITED STATES, INC., and** | : | |
| **Does 1 through 100,** | : | **CLASS ACTION** |
| | : | **COMPLAINT** |
| | : | |
| **Defendants.** | : | **JURY TRIAL** |
| | : | **DEMANDED** |

Plaintiff Mary Dolby ("Plaintiff"), residing at 3728 Genevieve Street, Apt. 24, San Bernardino, California 92413, with a mailing address of 1705 E. Washington, Suite 111-138, Colton, California 92324, by and through her attorney, individually and on behalf of all others similarly situated (*i.e.,* the members of the Plaintiff Class described and defined herein), alleges as follows upon personal knowledge as to herself, and as to all other matters upon information and belief.

## <u>NATURE OF ACTION</u>

1.  This is a consumer class action on behalf of all persons who purchased Slim-Fast Ready to Drink Shakes ("THE PRODUCT") produced by Defendant Unilever United States, Inc. ("Unilever," or "Defendant"), and who were denied a refund pursuant to Unilever's voluntary recall of this product after Unilever first told consumers to immediately discard THE PRODUCT, and then later required that consumers provide UPC codes from THE PRODUCT'S containers or photographs of the product.

2.  As a result of Defendant's fraudulent misrepresentation, concealment and unfair and deceptive practices, Plaintiff and the Class members, as defined herein, have been damaged and Defendant has been unjustly enriched.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005).  The amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and there is minimal diversity because certain members of the class are citizens of a different state than any defendant as required by 28 U.S.C. § 1332(d)(2).

4.      Venue as to Defendant is proper in this judicial district because Defendant Unilever United States, Inc. is headquartered and has its principle place of business in Englewood Cliffs, New Jersey, and some of the acts complained of occurred in this judicial district.

## PARTIES

5.      Plaintiff Mary Dolby is a resident of the city of San Bernardino, State of California. She purchased THE PRODUCT in September and October 2009, and has incurred significant monetary and non-monetary damages as a result of the Defendant's conduct complained of herein.

6.      Defendant Unilever United States, Inc. is a Delaware corporation, with its principal place of business at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Defendant is in the business of manufacturing, distributing and selling consumer products including the product sold as Slim-Fast Ready to Drink Shakes.  Based on information and belief, Defendant is a wholly owned subsidiary of Unilever, Inc., a diversified multi-national publicly traded company, and sells its products, including Slim-Fast Ready to Drink Shakes in California and each of the other 49 states.

7.      Various others, presently unknown to Plaintiff, participated as co-conspirators with or as agents of Defendant in the violations of law alleged in this complaint.  Based upon information and belief, Plaintiff alleges that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each

2

of the other Defendants.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each of the other Defendants.

8.      Based on information and belief, each and every Defendant conspired together to implement the unlawful practices described herein, and each Defendant did thereafter take specific actions as alleged herein in furtherance of that conspiracy, thereby causing the alleged damages to Plaintiff and all others similarly situated.

<u>FACTUAL ALLEGATIONS</u>

9.      Defendant marketed and sold the Slim-Fast Ready to Drink Shake as a meal replacement that would result in weight loss.  THE PRODUCT was heavily marketed and sold in a large number of consumer stores.

10.     On December 3, 2009, Defendant announced that it was voluntarily recalling all of its Slim-Fast Ready-to-Drink products in cans ("THE PRODUCT") due to the risk of contamination with Bacillus Cereus.  It did this recall in cooperation with the United States Food and Drug Administration ("FDA").  THE PRODUCT was sold either packaged together in 4 (four), 6 (six), or 12 (twelve) steel cans that were labeled as containing 11 Fl OZ, or were sold separately.  All of the THE PRODUCT, regardless of the date or location of manufacture, was included in the recall.

11.     Defendant and the FDA were very proactive regarding getting word of the recall out to its customers.   The FDA posted information about the recall on its website (Ex. 1). It also posted Defendant's press release on the FDA website (Ex. 2).  Unilever also posted information on its own website (Ex. 3), and widely circulated its press release to a wide number of media outlets.  Those outlets used the press release to get the word out to customers about THE PRODUCT recall.  As illustrated by the stories run by CNNMoney.com (Ex. 4) and ABC News (Ex. 5), the word was circulated to customers using the information provided to the media outlets by Defendant.

12.     The information uniformly provided to customers both directly and through their press releases was identification of THE PRODUCT involved in the recall; the reason

for the recall; the action being taken by Defendant to cure the problem; and the action to be taken by customers who had purchased THE PRODUCT.

13.     The action Defendant and the FDA advised customers, which was communicated directly to customers through their websites and indirectly to customers through the media, was that it was very important "to immediately discard the product and contact the company at 1-800-896-9479 for a full refund."  The call number had live customer representatives during normal business hours as well as a 24/7 recorded message.

14.     Based on information and belief, whether a consumer called either a live customer representative or the automated message, they were advised to immediately discard THE PRODUCT, and then information was taken about contact information and the number of THE PRODUCT the customer had purchased.  The consumer was then told that they would receive their refund in approximately 4-6 weeks.  At no time when Defendant was urging customers to "immediately discard the product" did Defendant advise the customers that they would need the UPC codes and photographs of THE PRODUCT.  They were simply told to immediately discard THE PRODUCT and they would get a full refund.

15.     Based on information and belief, sometime in or about mid-February, 2010, instead of sending refund checks to customers that had communicated to Defendant that they had purchased the recalled product and had to throw it away because of the recall, Defendant began sending out a letter accompanied by a "Refund Check Request Form" (Ex. 6) to its customers, in which Defendant now required a proof of purchase from the customer in order to obtain the full refund for THE PRODUCT.  The proof of purchase required was either for the store receipt, UPC code from the outer carton, or a photo of the purchased product.

16.     These conditions for a refund were not relayed to customers at the time of the recall, and instead the customers were told both by the manufacturer of the product and the FDA that it was important that they immediately discard the product.  As a result, for

most customers that heeded the safety instructions, they discarded the product that contained the proof of purchase.  Further, it was likely the only proof of purchase most customers would have, as it would be unlikely that customers would retain store receipts for purchases made many months before, and were never told that they were required to retain it for their "full refund."  Finally, it would certainly be a very low number of customers that would photograph the product before discarding it when they were not advised to do so when contacting the Defendant.

17.    Based on information and belief, when Defendant decided that instead of sending the promised full refund payment, they were instead going to send customers a letter requiring proof of purchase that the customer likely would not have because they had been urged to immediately discard THE PRODUCT.  Defendant calculated and knew that this action would result in a large number of customers being unable to obtain their full refund.  Defendant also knew that requiring additional action from the customer instead of delivering its promised full refund check would result in a number of customers not going through the trouble of making claims because of the obstacles set up by Defendant to make a claim.  Defendant knew, through information and statistics in rebate situations, that each action required by the customer to obtain the rebate, results in a significant percentage of customers abandoning the process and thereby losing their rebate.

18.    Based on information and belief, Defendant's decision to not fulfill their promise to send out refund checks, and to instead require customers to send back proof of purchase they likely would not have, was for the purpose and with the knowledge that for a very large percentage of the customers, they would not receive the promised "full refund."  This action allowed Defendant to retain millions of dollars that Defendant had promised customers, the public, and the FDA that it would refund.

**FACTUAL ALLEGATIONS RELATING TO PLAINTIFF**

19.    On or about September and October, 2009, Plaintiff Mary Dolby purchased THE PRODUCT from a retail outlet store.

20.     At our around the time of the recall, Plaintiff was advised by a friend also using the product that she had seen on television news that there was a recall of THE PRODUCT.  That news had communicated a telephone number provided to it by Defendant.

21.     Plaintiff then called Defendant's telephone number.  She was advised to immediately discard THE PRODUCT.  Plaintiff was then asked to provide contact information and the number of THE PRODUCT she had purchased, which Plaintiff answered truthfully and fully.   Plaintiff was then told that in approximately 4-6 weeks she would receive a full refund check.  At no time during this conversation was Plaintiff advised to remove the labels from THE PRODUCT or to take a picture of THE PRODUCT before discarding it.  She was also not advised to keep her purchase receipt.

22.     Following this telephone call, in compliance with the instructions, Plaintiff immediately discarded THE PRODUCT without removing and saving the labels or taking a picture of THE PRODUCT.

23.     On or about February 25, 2010, Plaintiff received a letter from Defendant.  However, instead of it being a refund check, it was a letter and "Refund Check Request Form" (Ex 6) that instructed her that in order for her to obtain a refund, it was going to be necessary for her to provide a proof of purchase.

24.     Plaintiff did not have any of the stated required proof of purchase information.  She then called the listed Unilever Consumer Services telephone number.  She was advised by a customer representative that she would not be able to obtain a refund without one of the listed proof of purchase items.  Plaintiff advised the customer representative that she had done exactly what the company had advised her to do and how unfair this was.  She was told that there was nothing that could be done, and she was required to provide the proof of purchase or she would not obtain a refund.

25.     As Plaintiff does not have the now required proof of purchase, she had been deprived of her full refund by Defendant.

## CLASS ACTION ALLEGATIONS

26.   Plaintiff initially proposes a nationwide class.  The "Class" is defined as follows:

**All consumers who reported their claim for the cost of THE PRODUCT to Defendant; were not advised by Defendant that a proof of purchase was required at the time they reported the claim; and have not been provided a full refund.**

27.   Excluded from the above class are any entities in which Defendant has a controlling interest, officers or directors of Defendant, and any customers who have brought individual lawsuits arising form the same allegations against Defendant.

28.   This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Federal Rules of Civil Procedure 23(a) and 23(b).  Plaintiff reserves the right to modify the class definitions and the class period based on the results of discovery.

29.   **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes that there are thousands of customers in the class.  Because the class members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be ascertained.  Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

30.   **Existence and Predominance of Common Questions of Fact and Law** – There are questions of law and fact common to the Class.  These questions predominate over any questions affecting only individual class members.  These common legal and factual issues include, but are not limited to:

  a.   whether Defendant engaged in the alleged scheme as set forth throughout this Complaint;

  b.   whether Defendant's affirmative representations advising consumers to immediately discard THE PRODUCT without disclosing that proof of

purchase would be required in order to obtain a refund from the recall were material;

c.  whether Defendant concealed and failed to disclose to the Class members that they would be required to provide the UPC code or a photograph of the THE PRODUCT before receiving a refund was material;

d.  whether Plaintiff and the Class members were damaged as a result of this fraudulent and unfair scheme; and

e.  whether Defendant's conduct as described above constitutes violations of the causes of action set forth below.

31.  **Typicality** – The claims of the representative Plaintiff are typical of the claims of the members of the Class.  Plaintiff, like all other members of the Class, had sustained damages arising from Defendant's violations of the laws, as alleged herein.  The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

32.  **Adequacy** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex and class action litigation.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all Class members.

33.  **Predominance and Superiority** – This suit may be maintained as a class action under Federal Rules of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by individual Class members, while substantial, are small compared to the burden and expense of individual prosecution of the complex and very expensive litigation needed to address

Defendant's conduct.  Even if class members themselves could afford such individual litigation, the court system would be overwhelmed by the individual lawsuits.  In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

34.    The Class Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action.  Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices.  To the extent that any further notices may be required, the Class Plaintiffs would contemplate the use of additional media and/or mailings.

35.    In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a.    Without class certification and determination of declaratory, injunctive, statutory, and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i.    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

        ii.    Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

b.     The parties expected to oppose the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

c.     Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

   i.     The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

   ii.    The extent and nature of any litigation concerning the controversy already commenced by or against members of the Class;

   iii.   The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

   iv.    The difficulties likely to be encountered in the management of a class action.

### FIRST CAUSE OF ACTION

### New Jersey Consumer Fraud Act, N.J.S.A. § 56.8-1, *et seq*.

36.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

37.    Plaintiff and members of the Class are consumers who purchased one or more contaminated PRODUCT, and were injured by being denied a refund under Defendant's recall.

38.    New Jersey has enacted laws to protect consumers against unfair, deceptive or fraudulent business practices, unfair competition and false advertising, which provides consumers with a private right of action under these statutes.  The New Jersey Consumer Fraud Act is codified at N.J.S.A. § 56.8-1, *et seq*.

39.     In violation of these statutes, Defendant has affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts with the intent that others rely upon such concealment and deception in connection with receiving refunds under the recall of THE PRODUCT.

40.     The conduct of Defendant, as set forth above, constitutes unfair, unconscionable, fraudulent and/or deceptive trade practices prohibited under the New Jersey Consumer Fraud Act and the consumer fraud acts of various other states.

41.     Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

42.     As a result of Defendant's unfair, fraudulent and/or deceptive trade practices, Plaintiff and members of the Class have suffered an ascertainable loss of monies and/or property and/or value, for which Defendant is liable to Plaintiff and the Class for treble their ascertainable losses, plus attorneys' fees and costs, along with the equitable relief of restitution.

43.     Remedies under the New Jersey Consumer Fraud Act are cumulative to remedies under the other causes of action.

**SECOND CAUSE OF ACTION**

**Fraud**

44.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

45.     The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiff and the members of the Class, as set forth above, were known by Defendant to be false and material and were intended by Defendant to mislead Plaintiff and the members of the Class.

46.     At all times mentioned herein, Defendant had a duty to disclose to Plaintiff the true and complete facts relating to obtaining a refund under the recall.  However, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff and with the intent to defraud as herein alleged.

47.     Plaintiff and the Class members were actually misled and deceived and were induced by Defendant to immediately discard THE PRODUCT prior to being notified that a UPC code or photograph of THE PRODUCT would be required to obtain a refund under the recall.  The reliance by Plaintiff and the Class members on Defendant's instruction was reasonable.

48.     Had Plaintiff and the Class members been timely notified that a UPC code or photograph of THE PRODUCT would be required to obtain a refund, then they would not have acted as they did, which was to immediately discard THE PRODUCT, pursuant to Defendant's instruction.

49.     As a result of the conduct of Defendant, Plaintiff and the Class members have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### Negligent Misrepresentation

50.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

51.     Defendant had a legal duty to disclose to Plaintiff and the Class members material facts with regards to obtaining a refund under the recall.  Once Defendant undertook a recall and affirmatively instructed Plaintiff and the Class to immediately discard THE PRODUCT, Defendant had an obligation to also timely provide the complete requirements for obtaining a refund under the recall.

52.     Defendant's instruction to Plaintiff and the Class members to immediately discard THE PRODUCT in notifying them of the recall was a material misrepresentation as such representation directly conflicted with obtaining a refund under the recall.

53.     The requirements of producing THE PRODUCT, a UPC code, or photograph of THE PRODUCT were material facts relating to obtaining a refund under the recall.

54.     Such knowledge was completely in the possession of Defendant and was unknown to Plaintiff and the Class members.  The failure to disclose such material facts was uniform for all customers.

55.   Defendants uniformly represented to Plaintiff and the Class members through their written materials and telephone customer service line that customers were to immediately discard THE PRODUCT and that they would receive a refund after notifying Defendant the number of THE PRODUCT that customers had purchased. Defendant knew, or in the exercise of reasonable diligence should have known, that Plaintiff and the Class members would rely upon such representations.

56.   Plaintiff and the Class members did reasonably rely on those representations.

57.   Had Plaintiff and the Class members known about these material facts, they would not have discarded THE PRODUCT without first taking down the UPC code or a photograph of THE PRODUCT.

58.   As a result of the conduct of Defendant, Plaintiff and the Class Members have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### Unjust Enrichment

59.   Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

60.   Substantial benefits have been conferred on Defendant by Plaintiff and the Class and Defendant has appreciated these benefits.

61.   Defendant's acceptance and retention of these benefits under the circumstances make it inequitable for Defendant to retain the benefit without payment of the value to the Plaintiff and the Class.

62.   Defendant, by the deliberate and fraudulent conduct complained of herein, has been unjustly enriched in a manner that warrants restitution.

63.   As a proximate consequence of Defendant's improper conduct, Plaintiff and the Class members were injured.  Defendant has been unjustly enriched, and in equity, should not be allowed to obtain this benefit.

//

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for relief as follows:

A.      For an order certifying the nationwide Class and appointing Plaintiff and her counsel to represent the Class;

B.      For an order awarding Plaintiff and the Class restitution and/or disgorgement of profits and other equitable relief as the Court deems proper;

C.      For an order awarding Plaintiff and the Class compensatory and other damages under statute or common law as alleged in this Complaint, in an amount to be determined at trial;

D.      For an order awarding Plaintiff and the Class punitive damages as to the appropriate cause of action, pursuant to N.J.S.A § 56:8-19 and other laws;

E.      For an order awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs; and

F.      For an order awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, and all others similarly situated, hereby demand a trial by jury herein.

DATED:  March 17, 2010.                         MᴄCᴜɴᴇWʀɪɢʜᴛ, LLP

                                        BY:    /s/  Michele M. Vercoski

                                        RICHARD D. McCUNE
                                        CA State Bar No. 132124
                                        (*Pro Hac Vice* Application Pending)
                                        rdm@mccunewright.com
                                        MICHELE M. VERCOSKI
                                        State Bar No.: 031012004
                                        mmv@mccunewright.com
                                        MᴄCᴜɴᴇWʀɪɢʜᴛ LLP
                                        2068 Orange Tree Lane, Suite 216
                                        Redlands, California  92374
                                        Telephone:  (909) 557-1250
                                        Facsimile:  (909) 557-1275

                                        Attorneys for Plaintiff

# EXHIBIT "1"



U.S. Department of Health & Human Services

 U.S. Food and Drug Administration

Home > Food > News & Events > What's New in Food

Food

## Slim-Fast Recall Q&A

On Dec. 3, Unilever United States, Inc., announced a nationwide voluntary recall of all of its Slim-Fast ready-to-drink products in cans due to the risk of contamination with *Bacillus cereus*. The Questions and Answers below provide additional information about *Bacillus cereus*, the recalled products, and the FDA's investigation of the situation.

**What is *Bacillus cereus*?**

*Bacillus cereus* is a bacterium that can cause foodborne illness.

**What are the symptoms of illness caused by *Bacillus cereus*?**

*Bacillus cereus* can cause two types of foodborne illness -- a diarrheal illness and a vomiting illness.

- Symptoms of *Bacillus cereus* diarrheal illness include watery diarrhea, abdominal cramps, and pain beginning six to 15 hours after consumption of contaminated food. Nausea may accompany these symptoms, but vomiting rarely occurs. Symptoms for the diarrheal illness typically persist for 24 hours.
- Symptoms of *Bacillus cereus* vomiting type of illness include nausea and vomiting within 30 minutes to six hours after consumption of contaminated foods. Occasionally, abdominal cramps and/or diarrhea may also occur. Duration of the symptoms for the vomiting type of illness is generally less than 24 hours.
- More information on *Bacillus cereus* and the illness it causes is available at this link to **FDA's Bad Bug Book** [1].

**How can I tell if the product I have is the same as the product under recall?**

The recalled products are packaged in paperboard cartons and contain 4, 6 or 12 steel cans that are labeled as containing 11 FL OZ (325 mL) each. Individual cans are also sold in certain retail outlets. The recall involves all Slim-Fast ready-to-drink products in cans, regardless of flavor, Best-By date, lot code, or UPC number. A listing of all recalled Slim-Fast ready-to-drink products in cans and a photograph of a recalled product are attached to the firm's press release, which is available on the **FDA's Safety Alerts Page** [2].

**Are all Slim-Fast products affected by this recall?**

No. Only Slim-Fast ready-to-drink products in cans are affected by this recall.

**I recently drank some of the recalled product and feel sick. What should I do?**

If you are experiencing symptoms described above and have recently ingested some of the recalled product, FDA advises that you see a doctor.

**I have some of the recalled product in my home. What should I do with it?**

Consumers who have any of the recalled products on hand should throw them away immediately.

**I drank some of the recalled product but did not get sick. Can I continue to drink the product I have on hand?**

No. The product is under voluntary recall and consumers should not drink any of the recalled Slim-Fast products.

**I feel sick but haven't drunk any of the recalled product for several days. Could it be the product that made me sick?**

Highly unlikely. The onset of symptoms of *Bacillus cereus* illness normally occurs within a 1/2 hour to 15 hours after a contaminated food product has been consumed, but, if you are unsure, then you should see a doctor.

**What is the FDA doing about this recall?**

FDA is investigating at the processing plant where the recalled products were manufactured, and working directly with the company to ensure that all suspect products are removed from the marketplace and that the public and the media are informed about this product recall and the potential risk to consumers.

**Can I get my money back for recalled product I have already purchased?**

Unilever has advised customers to call 1-800-896-9479 for a full refund.

## Resources For You

- Unilever Conducts Nationwide Voluntary Recall of Slim-Fast® Ready-to-Drink Products in Cans Due to Possible Health Risk [3]
- FoodSafety.gov: Your Gateway to Federal Food Safety Information [4]
- Listen to the podcast [5]
- Read the Script from Podcast [6]
- Sign Up for Recall Email Updates [7]
- FDA Recall Information on Twitter [8] [9]

---

**Links on this page:**

1. http://www.fda.gov/Food/FoodSafety/FoodborneIllness/FoodborneIllnessFoodbornePathogensNaturalToxins/BadBugBook/ucm070492.htm
2. http://www.fda.gov/Safety/Recalls/ucm192978.htm
3. http://www.fda.gov/Safety/Recalls/ucm192978.htm
4. http://www.foodsafety.gov

**EXHIBIT 1**

5. http://www.foodsafety.gov/keep/recalls/slimfast.mp3
6. http://www.foodsafety.gov/keep/recalls/slimfast.html
7. http://service.govdelivery.com/service/subscribe.html?code=USFDA_48
8. http://twitter.com/foodsafetygov
9. http://www.fda.gov/AboutFDA/AboutThisWebsite/WebsitePolicies/Disclaimers/default.htm

**EXHIBIT 1**

EXHIBIT "2"



U.S. Department of Health & Human Services

**FDA** U.S. Food and Drug Administration

Home > Safety > Recalls, Market Withdrawals, & Safety Alerts

**Safety**

### Recall -- Firm Press Release

FDA posts press releases and other notices of recalls and market withdrawals from the firms involved as a service to consumers, the media, and other interested parties. FDA does not endorse either the product or the company.

### Unilever Conducts Nationwide Voluntary Recall of Slim-Fast® Ready-to-Drink Products in Cans Due to Possible Health Risk

**Contact:**
Anita Larsen
201-894-7760

**FOR IMMEDIATE RELEASE** - Englewood Cliffs, NJ, December 3, 2009 - Unilever United States, Inc., in cooperation with the U.S. Food and Drug Administration (FDA), is conducting a nationwide voluntary recall of all Slim-Fast® ready-to-drink (RTD) products in cans, due to the possibility of contamination with Bacillus cereus, a micro-organism, which may cause diarrhea and possibly nausea and/or vomiting. The probability of serious adverse health consequences is remote.

The products were sold in stores nationwide.

**Product Description:**

The products are packaged in paperboard cartons and contain four, six or 12 steel cans that are 11 FL OZ (325 mL) each. Individual cans are also sold in certain retail outlets. The recall involves **all** Slim-Fast® RTD products in cans, regardless of flavor, Best-By date, lot code or UPC number. A listing of all RTD recalled products is attached to this press release.

No other Slim-Fast® products are affected by this recall. No Slim-Fast® powdered shakes, meal bars, or snack bars are affected by this recall.

The recall was initiated after the company conducted quality testing on Slim-Fast® RTD products in cans. Out of an abundance of caution, the company is recalling all RTD products in cans that are currently in distribution centers, on-shelf or in back rooms in retail outlets or in consumers' homes. The company is in the process of identifying and correcting the production issue, and will resume production and shipment of the product when the issue has been addressed and corrected.

Consumers who have purchased Slim-Fast® RTD products in cans are urged to discard them immediately and contact the company at **1-800-896-9479** for a full refund. The Consumer Services Center is open Monday – Friday, 8:30 AM – 6:00 PM ET. A recorded message is available 24/7.

### ###

Photo: Product Labels [1]

List of Products - US (PDF - 83KB) [2]

RSS Feed for FDA Recalls Information [3] [what's this? [4]]

**Links on this page:**

1. http://www.fda.gov/Safety/Recalls/ucm193048.htm

2. http://www.fda.gov/downloads/Safety/Recalls/UCM192987.pdf

3. http://www.fda.gov/AboutFDA/ContactFDA/StayInformed/RSSFeeds/Recalls/rss.xml

4. http://www.fda.gov/AboutFDA/ContactFDA/StayInformed/RSSFeeds/default.htm

**EXHIBIT 2**

# EXHIBIT "3"



Unilever

**USA**

# Unilever Conducts Nationwide Voluntary Recall of Slim-Fast® Ready-to-Drink Products in Cans Due to Possible Health Risk

**12/03/09** : Unilever United States, Inc., in cooperation with the U.S. Food and Drug Administration (FDA), is conducting a nationwide voluntary recall of all Slim-Fast® ready-to-drink (RTD) products in cans, due to the possibility of contamination with Bacillus cereus, a micro-organism, which may cause diarrhea and possibly nausea and/or vomiting.

**Englewood Cliffs, NJ, December 3, 2009** – Unilever United States, Inc., in cooperation with the U.S. Food and Drug Administration (FDA), is conducting a nationwide voluntary recall of all Slim-Fast®ready-to-drink (RTD) products in cans, due to the possibility of contamination with *Bacillus cereus*, a micro-organism, which may cause diarrhea and possibly nausea and/or vomiting. The probability of serious adverse health consequences is remote.

The products were sold in stores nationwide.

**Product Description:**

The products are packaged in paperboard cartons and contain four, six or 12 steel cans that are 11 FL OZ (325 mL) each. Individual cans are also sold in certain retail outlets. The recall involves **all** Slim-Fast®RTD products in cans, regardless of flavor, Best-By date, lot code or UPC number. A listing of all RTD recalled products may be found here: http://www.businesswire.com/portal/site/home/permalink/? ndmViewId=multimedia_detail&newsId=20091203006386&newsLang=en&contentGroupId=1890119

No other Slim-Fast® products are affected by this recall. No Slim-Fast® powdered shakes, meal bars, or snack bars are affected by this recall.

The recall was initiated after the company conducted quality testing on Slim-Fast®RTD products in cans. Out of an abundance of caution, the company is recalling all RTD products in cans that are currently in distribution centers, on-shelf or in back rooms in retail outlets or in consumers' homes. The company is in the process of identifying and correcting the production issue, and will resume production and shipment of the product when the issue has been addressed and corrected.

Consumers who have purchased Slim-Fast®RTD products in cans are urged to discard them immediately and contact the company at **1-800-896-9479** for a full refund. The Consumer Services Center is open Monday – Friday, 8:30 AM – 6:00 PM ET. A recorded message is available 24/7.

**EXHIBIT 3**

# # #

## Unilever United States, Inc.:

800 Sylvan Avenue
Englewood Cliffs
New Jersey 07632

T: +1 201 894 7760
F: +1 201 871 8076

MediaRelations.usa@unilever.com

**EXHIBIT 3**

# EXHIBIT "4"

# CNN**Money**.com

# Slim-Fast launches recall of 10 million cans

### Unilever recalls the weight loss drink because of possible bacterial contamination.

By Hibah Yousuf, CNNMoney.com staff reporter

Last Updated: December 4, 2009: 3:05 PM ET
NEW YORK (CNNMoney.com) -- The maker of Slim-Fast announced a recall of its canned, ready-to-drink products due to possible bacterial contamination.

Unilever, the company which also makes products like Skippy peanut butter and Ragu pasta sauce, said the weight-loss drink may be tainted by Bacillus cereus, which can cause diarrhea, nausea and vomiting.

U.S. Food and Drug Administration spokeswoman Rita Chappelle said the recall affects 10 million cans distributed in the United States.

Unilever (UL) said it is still in the process of identifying and correcting the production p roblem that led to the contamination. The FDA, which was notified by Unilever of the possible contamination on Dec. 2, is currently investigating the company's production facility in Covington, Tenn.

All Slim-Fast ready-to-drink products served in cans, regardless of flavor, best-by dates, lot code or UPC number that are currently in retail distribution centers, on store shelves, in warehouses or in consumer homes are being recalled, the company said Thursday.

The recall does not apply to other Slim-Fast branded products, such as powdered shakes, meal bars or snack bars.

Englewood Cliffs, N.J.-based Unilever urges consumers who have purchased the possibly hazardous products to discard them immediately and contact the company at 1-800-896-9479 for a full refund.

**CNN's Mythili Rao and Saundra Young contributed to this report.** First Published: December 4, 2009: 2:32 PM ET

Unilever to buy Sara Lee unit for $1.9 billion

Toyota to reconfigure 4 million gas pedals

Advertisement



Print Powered By FormatDynamics

**EXHIBIT 4**

# EXHIBIT "5"


NOW EVERYONE PAYS
$8.95
PER ONLINE
EQUITY TRADE
INVESTORS
RULE




**abc NEWS** / **Politics**

HOT TOPICS:
Harry Reid · iPad · ACC Tournament

Video · Blogs · Mobile · Newsletters · Topics · ABC · ESPN

SEARCH

Home   Video   News   **Politics**   Blotter   Health   Entertainment   Money   Tech   Travel   World News   Nightline   This Week   20/20   Good Morning America

MORE POLITICS: Eric Massa   Afghanistan   Jihad Jane   The Note   Political Punch   Polling Unit   'Top Line' Webcast   George's Bottom Line

**Watch**
**Video →**


WATCH: Bat Attack! Cuban Baseball Gone Wild

WATCH: Howard Stern's Not So 'Precious' Remarks


WATCH: Kimmel: Reporter Flips Out on TV


WATCH: 'View' Fires Back at 'O'Reilly Factor'

Home › Politics

# 'Slim Fast' Recalls All Shakes, Diet Drinks
Unilever Says All Its Liquid Products May Be Affected By Non-Lethal Toxin

By BRIAN HARTMAN
Dec. 4, 2009

abc NEWS
38 comments

Share this story with friends

3 diggs   diggit        Facebook        Twitter        E-mail   RSS   Print   Font Size   A
                                                        Reddit   StumbleUpon   More

Slim Fast is recalling every last one of its popular diet drinks over concern they may be contaminated with bacteria that can cause moderate food poisoning.



1:08
High-Risk Foods You Didn't Expect

Surprisingly, spinach, potatoes and eggs pose a high risk of food poisoning.

All cans and cartons of ready-to-drink Slim Fast products -- about 10 million of them -- are affected, "regardless of flavor, best-by date, lot code or UPC number," the recall notice reads.

Unilever, which makes Slim Fast, said the recall was prompted by "quality testing" that turned up Bacillus cereus, a toxin that can cause nausea and diarrhea but that is not life-threatening.

A Food and Drug Administration official said the inspection that uncovered the B. cereus was conducted after several consumers complained to the company. The official said FDA has received "a handful of complaints from time to time about this product but not recently."

**Related**


Nestle
Chocolate Chip

WATCH: Dangerous Strain of E. Coli Linked to Nestle


WATCH: Peanut Co. Dismissed From Capitol Hill


WATCH: Horror of E. Coli Poisoning

Unilever spokeswoman Anita Larsen said the quality assurance testing that resulted in this recall was strictly routine -- not the result of any complaints that had been received. Larsen said Unilever had received illness complaints from consumers but they had not been definitively linked to Slim Fast.

The Centers for Disease Control and Prevention considers B. cereus a mild disease that "is usually self-limiting and not severe." But Unilever said it was recalling the products "out of an

**Watch Video**



WATCH: Best of Late-Night Political Comedy

WATCH: Politician Admits to Hot Tub Incident With Teen

WATCH: Obama: US Must 'Up Our Game' on Exports

**Politics News**

Obama Delays Trip to Wrangle Votes

Dodd to Unveil Wall Street Reform Package

Biden: U.S. 'Shoulder to Shoulder' With Israel

First Women Airforce Pilots Get Gold

Think Twice: Sling Suffocations on the Rise

**Slideshows**


PHOTOS: Spielberg, Hanks Honor WWII Vets


PHOTOS: Women Airforce Service Pilots Through the Years


PHOTOS: President's Day: A Black President in the Making

abundance of caution."

**Sponsored Links**

**What's in Cramer's Portfolio?**
See exactly what Jim Cramer is doing with stocks like BAC, VISA, and GS.
www.ActionAlertsPLUS.com

**Great Reverse Mortgages**
Find reverse mortgage services in your local area.
JustClickLocal.com

Buy a link here

A CDC official said its epidemiologists have received no reports of illness associated with Slim Fast.

B. cereus, epidemiologists say, usually is associated with contaminated fried rice at Mexican and Asian restaurants. But its prevalence is hard to pin down. Few people report food poisoning to authorities and many state health departments don't track this particular ailment.

Unilever spokeswoman Larsen stressed that the recall involves only liquid products in cans and boxes -- not powdered shakes or diet bars.

The company urged consumers with recalled products "to discard them immediately and contact the company at 1-800-896-9479 for a full refund."

"The company is in the process of identifying and correcting the production issue," the recall notice read, "and will resume production and shipment of the product when the issue has been addressed and corrected."

Read 38 Comments and Post Your Own

Next Story: Obama Delays Trip to Wrangle Votes

*Share this story with friends*

3 diggs          Facebook     Twitter     Reddit     StumbleUpon     More

E-mail     RSS     Print

**Sponsored Links**

**Acai Berry EXPOSED?**
Discover The Shocking Truth Behind Acai Berry Diet. (Official Report)
www.6NewsReports.com

**Spinal Stenosis Treatment**
Our Minimally Invasive Procedure Can Diagnose & Treat Stenosis!
www.NorthAmericanSpine.com

**Try E-Cigarettes For Free**
The Next Great American Health Story? Smoke Guilt Free & Healthy!
Healthtrends.timesdailyjournal.com

Buy a link here

**Comment & Contribute**

Do you have more information about this topic? If so, please **click here** to contact the editors of ABC News.

POST YOUR COMMENT

**Member Comments (38)**

I discarded my product immediately as per slim fast instructions. I filled out the refund form on line as instructed. Now I get a letter requesting Store receipt, UPC codes from the outer carton and Photo of the purchased products. I was not told to do this in December when the recall was announced. I was following their instructions and expecting a full refund. Now I am getting this run around.

Bahaha perhaps why people lose weight on slim fast is because they can't keep food down when drinking them. My conspiracy theory: consumers weren't losing weight so they inoculated the slim fast diet drinks with a mild bacteria to give some symptoms of food poisoning, causing water weight loss. Things went too far, and before they knew it their customers were getting sick in ERs across the country. Some of these comments are very tragic- and it brings me back to why people are drinking slim fast in the first place. because they're too busy, because they're a "complete meal replacement" and because they're inexpensive. When you look at the drink, it's essentially deconstructed and reconstructed milk, corn, and vitamins. The ingredients include "non fat powdered milk" "whey protein" and "milk fat" instead of just milk.



**Facebook          RSS**

**Most Popular →**

| MOST VIEWED | MOST COMMENTED | MOST EMAILED |
|---|---|---|

Libraries' Tough New Tactic: Book 'Em!

Paranoid Schizophrenic Girl: Urges to Kill

New Message to Models: Eat!

WATCH: Howard Stern's Not So 'Precious' Remarks

WATCH: Kimmel: Reporter Flips Out on TV

WATCH: Man Jailed for Library Fine

PHOTOS: Tiger's Ladies: Howard Stern Holds Beauty Contest

PHOTOS: Jessica Simpson: 'I Don't Brush My Teeth'

PHOTOS: Kate Gosselin Chops It Off

More Popular News »

**ESPN Headlines →**

Monroe, Georgetown cruise into Big East final

Oregon's Masoli pleads guilty, banned for year

Second-half surge lifts Kansas into Big 12 final

Source: Woods' return tournament still up in air

Kobe, Lakers prevail as Suns get heated in loss

More from ESPN »

**Politics Daily Headlines →**

The Iraq War: Suddenly, It's Not So Bad After All

Faith-Based Politics? No -- 'What Happens in Church Stays in Church'

Cold, Hard Facts: U.S. Trails in Race for the Top of the World

Mark Twain Has Been Gone 100 Years, but His Political Wisdom Endures

Primera Dama Michelle Obama To Mexico In First Solo Official Trip

More from Politics Daily »

| MOST DUGG | UPCOMING |
|---|---|

**Most Dugg Stories on ABC News**

375 — President Obama to Say Democrats Will Use Reconciliation

336 — Pierce Brosnan Still Wants to Be Bond

271 — Porn and the Panda: If Porn Works for Them...

966 — Meghan McCain: Tea Party represents 'innate racism'

317 — The $100 Million Health Care Vote? - The Note



EXHIBIT "6"



Unilever

**Unilever
Consumer Services**
920 Sylvan Avenue - 2nd Fl.
Englewood Cliffs, NJ 07632

Ph#1.800.298.5018
www.unilever800.com

February 18, 2010

MS. MARY DOLBY        EW7327133
3728 GENEVIEVE ST APT 24
SN BERNRDNO, CA 92405-2276

Dear MS. MARY DOLBY,

The Slim-Fast team truly appreciates your business and patience, and we intend to honor all valid refund requests. The team apologizes for the inconvenience this recall has caused to your weight loss plans, following the December 3, 2009 U.S. recall announcement. We are working hard to get this Slim-Fast product back on shelf.

In order for us to substantiate your request, we are now seeking written confirmation from our loyal consumers who have purchased our Slim-Fast Ready-to-Drink product.

Please complete the enclosed Refund Check Request Form and provide us with documentation of your purchase. We will accept: store receipts, UPC codes, or photos of your purchase. Please use the enclosed postage paid envelope to return the completed form and your documentation.

Thank you for your understanding and patience.

Sincerely,

*Chris Greene*
Consumer Response Representative

**EXHIBIT 6**



Unilever

ACK-G31

92405



PRESORTED
FIRST CLASS

neopost.

049J82044203
$ 00.357
Mailed From 07032
02/23/2010
US POSTAGE

**EXHIBIT 6**

**REFUND CHECK REQUEST FORM**

At the time I learned of the Slim-Fast recall, I was in possession of [insert number] _____ cans of Slim-Fast Ready-to-Drink product.

I have enclosed the following documentation for my refund (please check all that apply):

_____ Store receipt

_____ UPC codes from the outer carton

_____ Photo of purchased products

I purchased these cans of Slim-Fast:

At [insert Store Name(s)] _____

At [Insert Location(s) of purchase – city, state] _____

On [insert date(s) of purchase] _____

I declare the above statement to be true under penalty of perjury.

Signature: _____ Date: _____

Name: _____

Address: _____

_____

Phone: _____

Email: _____

**EXHIBIT 6**